IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WRINKL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| FACEBOOK, INC., WHATSAPP, INC., | ) | **JURY TRIAL DEMANDED** |
| and INSTAGRAM, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Wrinkl, Inc. ("Wrinkl") files this Complaint for Patent Infringement and

Demand for Jury Trial against Facebook, Inc., WhatsApp, Inc., and Instagram, LLC

(collectively, "Defendants") and alleges as follows:

## THE PARTIES

1.      Plaintiff Wrinkl, Inc. is a Delaware Corporation with its principal place of

business in Blue Bell, PA.

2.      Defendant Facebook, Inc. ("Facebook") is a Delaware Corporation with its

principal place of business at 1 Hacker Way, Menlo Park, CA 94025.

3.      Defendant WhatsApp, Inc. ("WhatsApp") is a Delaware corporation with its

principal place of business at 1601 Willow Road, Menlo Park, CA 94025.  Upon information and

belief, WhatsApp is a wholly owned subsidiary of Facebook.

4.      Defendant Instagram, LLC ("Instagram") is a Delaware Corporation with its

principal place of business at 1601 Willow Road, Menlo Park, CA 94025.  Upon information and

belief, Instagram is a wholly owned subsidiary of Facebook.

## JURISDICTION AND VENUE

5.      This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*.  This Court has original jurisdiction over this controversy under 28 U.S.C. §§ 1331 and 1338.

6.      This Court has personal jurisdiction over Defendant Facebook, Inc. because Facebook, Inc. is a Delaware corporation and because, on information and belief, Facebook, Inc. has regularly and systematically transacted business in this judicial district, directly or through intermediaries, and/or committed acts of infringement in this judicial district.

7.      This Court has personal jurisdiction over Defendant WhatsApp, Inc. because WhatsApp, Inc. is a Delaware corporation and because, on information and belief, WhatsApp, Inc. has regularly and systematically transacted business in this judicial district, directly or through intermediaries, and/or committed acts of infringement in this judicial district.

8.      This Court has personal jurisdiction over Defendant Instagram, LLC because Instagram, LLC is a Delaware limited liability company and because, on information and belief, Instagram, LLC has regularly and systematically transacted business in this judicial district, directly or through intermediaries, and/or committed acts of infringement in this judicial district.

9.      Defendants' Registered Agent in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, County of New Castle, 19808.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b).

11.      Upon information and belief and as further explained below, Defendants have been and are acting in concert, and are otherwise liable jointly, severally or otherwise for a right to relief related to or arising out of the same transaction, occurrence, or series of transactions or occurrences related to the making, using, selling, offering for sale or otherwise distributing the Facebook Messenger, Facebook Workplace Chat, WhatsApp Messenger, and Instagram apps in

this District and elsewhere in the United States.  In addition, this action involves questions of law and fact that are common to all Defendants.

12.     Facebook's Form 10-Q filing to the Securities Exchange Commission for the period ending on June 30, 2020, uses the term "Family" to refer to "our Facebook, Instagram, Messenger, and WhatsApp products" and reports "estimates of the numbers of our daily active people (DAP), monthly active people (MAP), and average revenue per person (ARPP) (collectively, our 'Family metrics') based on the activity of users who visited at least one of Facebook, Instagram, Messenger, and WhatsApp (collectively, our 'Family' of products) during the applicable period of measurement."[1]  Upon information and belief, Facebook does not separately report revenue from the Accused Products in its filings to the Securities Exchange Commission, but rather reports combined revenue.

13.     Market analysis indicates that Facebook, WhatsApp, and Instagram and their respective products are viewed in the market as an integrated package with each of the products benefiting from substantial network effects.[2]

---

[1] https://investor.fb.com/financials/sec-filings-details/default.aspx?FilingId=14302237 (accessed Sept. 24, 2020).

[2] *See* https://www.marketwatch.com/story/the-youtube-and-instagram-secret-that-google-and-facebook-dont-want-you-to-know-2018-01-26 (accessed Sept. 24, 2020) ("For some analysts, the question of breaking out revenue for Instagram is moot, however, because the company essentially sells ads for Facebook and Instagram as a single package. . . ."); http://markets.businessinsider.com/news/stocks/facebook-stock-price-analyst-interview-2017-8-1002276065 (accessed Sept. 24, 2020) ("More and more people are spending more of their daily waking hours on Facebook. We estimate that across Facebook's different properties - Facebook.com, WhatsApp, Messenger, and Instagram - users spend on average close to an hour every day. That metric was a lot lower two or three years ago. By having people spend more time on the sites or apps, they're obviously consuming more content, more pages, and giving Facebook the ability to monetize against that content and pages."); https://www.morningstar.in/posts/59194/3/5-global-stocks-you-can-invest-in.aspx (accessed Sept. 24, 2020) ("Now that Facebook has emerged as the clear-cut social media leader, we believe that the company's offerings, consisting mainly of Facebook, Instagram, Messenger, and

14.     Upon information and belief, between 2017 and the filing of this Complaint, Facebook migrated the Instagram app and WhatsApp Messenger messaging services from third party servers onto servers in Facebook's own data centers.

15.     Upon information and belief, Facebook not only "owns," but also "operates" both the Instagram app and WhatsApp Messenger, such operation including the cooperative development, improvement, and/or support of their respective services.[3]

16.     Upon information and belief, user information is shared between Facebook, Instagram and WhatsApp.  For example, upon information and belief, Facebook "shares information about" Facebook's users with Instagram and WhatsApp "to facilitate, support and integrate [the Instagram app's and WhatsApp Messenger's] activities and improve our services."[4]  Likewise, upon information and belief, Instagram processes information "to support Facebook, Instagram, Messenger and other products and features offered by Facebook (Facebook Products or Products)."[5]  Similarly, "[a]s part of the Facebook family of companies, WhatsApp receives information from, and shares information with, this family of companies [including Facebook].  We may use the information we receive from them, and they may use the

---

WhatsApp, have further strengthened network effects for the firm, where all of these platforms become more valuable to its users as people both join the networks and use these services.").

[3] See https://www.facebook.com/help/111814505650678 (accessed Sept. 24, 2020); see also https://help.instagram.com/155833707900388 (accessed Sept. 24, 2020).

[4] See https://www.facebook.com/help/111814505650678 (accessed Sept. 24, 2020); see also https://help.instagram.com/155833707900388 (accessed Sept. 24, 2020).

[5] See https://help.instagram.com/155833707900388 (accessed Sept. 24, 2020).

information we share with them, to help operate, provide, improve, understand, customize,

support, and market our Services and their offerings."[6]

17.     Upon information and belief, WhatsApp and Instagram have endeavored to

integrate their messaging applications from a technical standpoint including, but not limited to:

the Instagram app allowing users to double-post Instagram stories directly to Facebook from the

Instagram app;[7] Facebook offering a unified messages inbox that lets businesses see and reply to

their Facebook Messenger, WhatsApp Messenger, and Instagram app interactions in one place;[8]

Facebook Messenger, WhatsApp Messenger, and the Instagram app providing cross-application

notifications;[9] and Facebook providing features allowing users to click a button on a business's

Facebook page to open a WhatsApp Messenger chat with that business.[10]  Accordingly,

Facebook is acting in concert with WhatsApp and Instagram in connection with the provision of

their messaging services, which are at issue in this action.

18.     Accordingly, Defendants may be joined in a single action for patent infringement,

pursuant to 35 U.S.C. § 299(a).

**PATENTS-IN-SUIT**

19.     Wrinkl is the owner of all right, title, and interest in U.S. Patent No. 9,860,198

("the '198 Patent"), titled "Apparatus and Method for Message Reference Management."  On

---

[6] *See* https://www.whatsapp.com/legal/; https://blog.whatsapp.com/10000627/Looking-ahead-for-WhatsApp (accessed Sept. 30, 2020).

[7] *See* https://techcrunch.com/2017/10/04/instaface/ (accessed Sept. 30, 2020).

[8] *See* https://www.engadget.com/2016/11/15/facebook-and-instagram-unified-business-inbox/ (accessed Sept. 30, 2020).

[9] *See* https://www.cnet.com/news/facebook-messenger-instagram-cross-notifications/ (accessed Nov. 15, 2016); https://techcrunch.com/2017/05/18/instafacemess/ (accessed Sept. 30, 2020).

[10] *See, e.g.*, https://www.theverge.com/2020/8/14/21369737/facebook-merging-instagram-messenger-chats-update (accessed Sept. 30, 2020).

January 2, 2018, the '198 Patent was duly and legally issued by the United States Patent and

Trademark Office ("USPTO").  The '198 Patent issued from Application No. 15/431,077, filed

on February 13, 2017, and claims priority to Provisional Application No. 62/446,067, filed on

January 13, 2017.  A true and correct copy of the '198 Patent is attached as **Exhibit A** to this

Complaint.

20. Wrinkl is the owner of all right, title, and interest in U.S. Patent No. 10,728,192

("the '192 Patent"), titled "Messaging Apparatus and Method Thereof."  On July 28, 2020, the

'192 Patent was duly and legally issued by the USPTO.  The '192 Patent issued from

Application No. 16/712,952, filed on December 12, 2019 and claims priority to Provisional

Application No. 62/446,067, filed on January 13, 2017.  A true and correct copy of the '192

Patent is attached to this Complaint as **Exhibit B**.

21. The '198 Patent and '192 Patent are collectively referred to herein as the "Patents-

in-Suit."

22. Wrinkl is the owner of all rights, title, and interest in and to the Patents-in-Suit

and possesses the exclusive right of recovery for past, present, and future infringement.

23. Wrinkl has not licensed the Patents-in-Suit to Defendants or any other entities, or

otherwise authorized Defendants to practice any of the claims of the Patents-in-Suit.

## FACTUAL BACKGROUND

24. Founded in 2015 by a small group of inventors and investors, Wrinkl sought to fix

"group messaging from the inside out to make it suitable for business use" and "developed a

group messaging platform that brought clarity and productivity back to collaboration."[11]  Since

---

[11] https://www.globenewswire.com/news-release/2018/02/05/1332958/0/en/Wrinkl-Granted-Three-Patents-for-its-Group-Messaging-Platform.html (accessed Sept. 30, 2020).

its inception, Wrinkl has invested substantial time, effort, and money in its group messaging platform "Wrinkl" that was initially released around January, 2018.[12]

25.     Among other innovations, Wrinkl's messaging application includes a "References" feature that enables users to easily indicate which message(s), in a moving stream of many, their new message responds or refers to.  According to PC Magazine, Wrinkl's "[r]eferencing seems like a better solution to the problem of replying to buried posts."[13]

### Wrinkl's Novel and Innovative Technical Inventions Are Protected by the Patents-in-Suit

26.     The Patents-in-Suit are generally directed to novel and inventive technical solutions to a problem relating to messaging applications.  *See, e.g.*, '198 Patent at 2:34-36.[14] The inventors recognized that "[o]ne of the drawbacks to using typical chat messaging systems is the sequential nature of the messages sent and received.  For example, messages often appear in a channel or log in chronological order.  If a user in a group chat session comes back from a meeting after several hours, they may be confronted with a bunch of messages. . . .  By the time a user views the messages, the topic may have changed several times.  This makes it difficult for a user to post a response to a previous message that is within context of the ongoing message conversation."  *Id.* at 3:3-8.

27.     The inventions of the Patents-in-Suit provide technical solutions to the problems in prior art messaging applications.  The Patents-in-Suit describe, for example, "[m]ethods and

---

[12] https://www.globenewswire.com/news-release/2018/01/17/1295806/0/en/Wrinkl-Launches-Group-Messaging-Platform-to-Bring-Productivity-Back-to-Business-Communication.html (accessed Sept. 30, 2020).

[13] https://www.pcmag.com/reviews/wrinkl (accessed Sept. 30, 2020).

[14] Because the '198 Patent and '192 Patent share a common specification, in the interest of brevity, citations herein refer to the '198 Patent.  All citations to the '198 Patent should be understood as additionally referring to the same disclosures in the '192 Patent.

systems for providing references (such as context-based references) to link messages . . ." *Id.* at 3:15-18. The Patents-in-Suit further explain, for example, that "a user may make a selection associated with a first message which then automatically inserts a reference object into a text entry bar of a chat message system. The reference object may provide a link to automatically identify and access data from the first message. The user may then add additional text in the text message box before or after the reference object." *Id.* at 4:45-51. Further, "the ability to insert the reference object into the text entry box through a single click (or with fewer operations than with other methods) enables information associated with a message to be easily available (i.e. displayable) by reference to another message." *Id.* at 17:6-10. The Patents-in-Suit also explain that "[t]he reference object may provide a link to automatically identify and access data from the first message. The user may then add additional text in the text message box before or after the reference object. When the message is sent, a display object associated with the first message is included in the newly posted second message." *Id.* at 4:48-50.

28.     Given the state of the art at the time of the inventions of the Patents-in-Suit, the inventive concepts of the Patents-in-Suit were not conventional, well-understood, or routine. The Patents-in-Suit disclose, for example, unconventional technical advantages over prior art messaging user interfaces in the context of wireless communication devices and electronic messaging received within those devices. For example, the Patents-in-Suit provide a single-step reply feature for an instant messaging application that references a specific message in a conversation involving a plurality of users. As of the effective filing date of the Patents-in-Suit, it was not conventional for a messaging application to enable a user to create replies that referenced specific messages or to create replies with single-step activation.

29.     The inventions of the Patents-in-Suit improve the performance of the devices on which they are used including, for example, mobile devices with limited memory and processing capabilities.  For example, the Patents-in-Suit explain how "computer processing efficiency is improved through the use of links and without simply duplicating previously inputted data. Efficiency is also improved by enabling access to at least a portion of previously available data without a need to manually locate the previously available data."  *Id.* at 4:58-53; *see also, e.g.*, *id.* at 2:43-62.  As another example, the Patents-in-Suit explain how "the ability to insert the reference object into the text entry box through a single click (or with fewer operations than with other methods) enables information associated with a message to be easily available (i.e. displayable) by reference to another message."  *Id.* at 17:6-10.  Further, "[t]he ability to view a first message (or other data) while a second message is in an area of a display that was being viewed allows efficient operation of a computing device without manual searching for the first message."  *Id.* at 17:1-4.  This technical context is reflected in the Patents-in-Suits' claims.  For example, none of the claimed inventions can be performed in the human mind and all of them entail specific technical features of a user interface for an electronic device.

30.     Consistent with the problems addressed being rooted in electronic messaging, the Patents-in-Suits' solutions are also rooted in technology that cannot be performed with pen and paper or in the human mind.  Using pen and paper would ignore the stated purposes of the Patents-in-Suit and the problems they were specifically designed to address, which arose in, for example, the context of needing an improved user interface for messaging devices.  Doing so would also run counter to the inventors' detailed description of the inventions and the language of the claims and be a practical impossibility.

31.     Thus, at the time of the '198 Patent, it was not common or conventional to perform a method for referencing a message, said method comprising the steps of: receiving selection, from a display, of said message by selecting an area or object displayed on said display and associated with said message, wherein at least a portion of said message is displayed during said selection; allowing a further message to be formed with a link to said message, wherein said message was displayed prior to said further message being formed; wherein said selection causes said link to be included automatically in said further message and is performed by a single step, which is the selection itself; wherein said link is associated with said further message, and wherein said link is included in said further message responsive to said selection of the area or object; and changing display of information associated with said message a) responsive to selection of a displayed further area or portion associated with said further message; and b) based on said link; wherein said message and said further message are transmitted at respectively different times.

32.     At the time of the '192 Patent, it was not common or conventional to perform a method for operating a messaging device, said method comprising the steps of: displaying to a first user, on a display of said device, a window displaying at least a portion of a stream comprising graphical message display objects, each graphical message display object displayed in said window occupying a respective displayed area having a boundary and one or more fixed graphical elements displayed therein, wherein said window is associated with a predefined plurality of users of a messaging system, said plurality including said first user, and wherein at least a subset of the display objects in said stream represent respective messages of a chat message session between those users; directly responsive to receiving, through a user interface of said device, a single click or touch screen gesture that interacts with at least one of said fixed

10

graphical elements displayed within the boundary of a first one of said displayed graphical message display objects: displaying, on said display and in conjunction with display of a message creation interface including a text entry box, a reference indication indicating a reference to said first one of said displayed graphical message display objects; while said message creation interface is displayed, continuing to display at least a portion of said stream in said window, and enabling the device to respond to clicks or touch screen gestures that interact with at least one other of said graphical message display objects in said stream; in response to receiving further user input through said message creation interface during display of said reference indication: displaying, in said window, a new graphical message display object based on said further user input and in association with a graphical reference to a message associated with said first one of said displayed graphical message display objects; and transmitting, to at least one of said predefined plurality of users, a message based on said further user input, and a reference to said message associated with said first one of said displayed graphical message display objects; and making said device responsive to a click or touch screen gesture interacting with said graphical reference to provide a further display indicating content of said message represented by said graphical reference.

**Despite Learning of Wrinkl's Technology,**
**Defendants Chose to Infringe Wrinkl's Patents**

33.     Upon information and belief, Defendants have been aware of Wrinkl's patented inventions since at least as early as October 11, 2018.

34.     On October 11, 2018, named inventor Marc Cohen emailed a Facebook Vice-President named Julien Codorniou to introduce Wrinkl's patented technology to Facebook and to discuss a potential strategic collaboration between Wrinkl and Facebook (*see* **Exhibit C**).

35.     Mr. Cohen's email explained that Wrinkl had developed a 2018 Appy-Award winning group messaging app, and had developed foundational intellectual property in the group messaging space.

36.     Mr. Cohen's email further included a link to a short video presentation describing the innovative "references" feature of Wrinkl, corresponding to the invention claimed in the Asserted Patents.

37.     Importantly, the '198 Patent number was prominently displayed at the end of the video presentation Mr. Cohen sent to Facebook.

38.     In response to Mr. Cohen's email, Mr. Codorniou acknowledged receipt of the email and stated that he would talk to his "team" about it.

39.     On October 19, 2018, Mr. Cohen sent a follow-up email to Mr. Codorniou providing additional information about Wrinkl's patents, including detailed information describing the '198 Patent, and its coverage of a "one-step" reply capability for group messaging.

40.     However, Mr. Codorniou did not respond further to Mr. Cohen's email.  Instead, as detailed below, Facebook and the other Defendants continued to promote and support their infringing messaging applications.

**Defendants' Infringement**

41.     As described further below, Defendants' messaging applications—including at least Facebook Messenger, WhatsApp Messenger, the Instagram app and, on information and belief,  Facebook Workplace Chat (collectively, "Accused Products")—practice claimed inventions of the Patents-in-Suit.

***Infringing Products***

42.     Facebook Messenger is a messaging application developed, distributed, and supported by defendant Facebook.  Facebook Messenger is available on smartphones and tablets running at least the Android and iOS operating systems.  Upon information and belief, at least as early as March, 2019, Facebook introduced to Facebook Messenger a feature that enabled users to generate a reply to a specific message in a chat window, which quoted and had a link to the original message, by simply swiping on the original message (hereinafter a "swipe-to-reply" feature).[15]

43.     Facebook Workplace Chat is a messaging application developed, distributed and supported by defendant Facebook.  Facebook Workplace Chat is available on smartphones and tablets running at least the Android and iOS operating systems.  Upon information and belief, Facebook introduced an infringing swipe-to-reply feature to Facebook Workplace Chat at least as early as late 2018.[16]

44.     WhatsApp Messenger is a messaging application developed, distributed and supported by defendant WhatsApp.  WhatsApp Messenger is available on smartphones and tablets running at least the Android and iOS operating systems.  Upon information and belief, WhatsApp introduced an infringing swipe-to-reply feature to WhatsApp Messenger at least as early as June, 6, 2017 for iOS and October 2018 for Android devices.[17]

---

[15] https://www.cnet.com/how-to/how-to-send-quoted-replies-in-facebook-messenger/#:~:text=To%20use%20it%20on%20your,immediately%20create%20a%20quoted%20reply (accessed Sept. 30, 2020); *see also* https://venturebeat.com/2019/03/20/facebook-messenger-now-has-message-threads/ (accessed Sept. 30, 2020); https://smartphones.gadgethacks.com/how-to/use-quote-replies-facebook-messenger-prevent-confusing-conversations-just-like-whatsapp-0195061/ (accessed Sept. 30, 2020).

[16] *See* https://www.workplace.com/blog/workplace-chat-updates/ (accessed Sept. 30, 2020)

[17] https://briffly.com/whatsapp-for-ios-gets-swipe-to-reply-filters-and-tiled-albums/ (accessed Oct. 1, 2020); https://mspoweruser.com/whatsapp-rolls-out-a-new-update-for-its-beta-app-on-android-brings-swipe-to-reply-feature/ (accessed Sept. 30, 2020);  *see also, e.g.*,

45.     The Instagram app is a messaging application developed, distributed and supported by defendant Instagram.  The Instagram app is available on smartphones and tablets running at least the Android and iOS operating systems.  Upon information and belief, Instagram introduced an infringing swipe-to-reply feature to the Instagram app for at least a subset of users at least as early as August 2020.  In this regard, around August 2020, Instagram updated the Instagram app for a select group of users and the update notification said that "There's a New Way to Message on Instagram." [18]  The notification highlighted only four features, one of them being "Swipe to reply to messages."[19]

---

https://gadgets.ndtv.com/apps/news/whatsapp-for-android-beta-version-2-18-282-swipe-to-reply-dark-mode-features-1916955 (accessed Sept. 30, 2020); https://www.droidviews.com/how-to-enable-swipe-to-reply-on-whatsapp-for-android/ (accessed Sept. 30, 2020); https://www.androidpolice.com/2018/10/02/whatsapp-beta-2-18-300-adds-swipe-reply-gesture/ (accessed Sept. 30, 2020); https://mspoweruser.com/whatsapp-rolls-out-a-new-update-for-its-beta-app-on-android-brings-swipe-to-reply-feature/ (accessed Oct. 1, 2020); https://www.youtube.com/watch?v=A-hZkrEgnOs at 25-30 seconds (accessed Oct. 1, 2020); https://faq.whatsapp.com/general/chats/how-to-reply-to-a-message.

[18] https://www.theverge.com/2020/8/14/21369737/facebook-merging-instagram-messenger-chats-update (accessed Aug. 14, 2020).

[19] *Id.*



***Allegations Relating to Infringement of the '198 Patent***

46.     Upon information and belief after reasonable investigation, the Accused Products contain user interface functionality designed to facilitate swipe-to-reply messages in a manner that infringes the '198 Patent.

47.     One non-limiting example, set forth below (with claim language in italics), is a description of infringement of exemplary claim 1 of the '198 Patent in connection with the Facebook Messenger, Facebook Workplace Chat, and WhatsApp Messenger apps.  Upon information and belief, the Instagram app implements the same or substantially similar infringing functionality as the Facebook Messenger app and also infringes.

48.     This description is based on publicly available information.  Wrinkl reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

a.   *[1pre] A method for referencing a message, said method comprising the steps of:* — Regardless of whether the preamble of claim 1 is limiting, each of the Accused Products, when used as directed, causes a method for referencing a message, as described further below for the remaining claim limitations, to be performed.

b.   *[1a] receiving selection, from a display, of said message by selecting an area or object displayed on said display and associated with said message, wherein at least a portion of said message is displayed during said selection;* — Each of the Accused Products, when used as directed, allows a user to select a message (and thus receive a selection of the message) in a chat window by swiping on the message using a touch screen interface (and thus selecting an area or object displayed on said message and associated with said message), as illustrated below.  (Illustrative screenshots are provided herein for Facebook Messenger, Facebook Workplace Chat and WhatsApp Messenger.  Upon information and belief, the remaining Accused Products work in a substantially similar fashion.)

  

c.  *[1b] allowing a further message to be formed with a link to said message, wherein said message was displayed prior to said further message being formed;*

—When used as directed, each of the Accused Products responds to a user swiping a selected message by displaying a text input area that allows a further message to be formed with a link to the swiped message (which was displayed prior to the further message being formed).





d.  *[1c] wherein said selection causes said link to be included automatically in said further message and is performed by a single step, which is the selection itself;* — In each of the Accused Products, when used as directed, a link to the selected message is automatically included in said further message in response to a single swipe gesture, which also selected the selected message, as shown by way of example in relation to element [1b].

e.  *[1d] wherein said link is associated with said further message, and wherein said link is included in said further message responsive to said selection of the area or object;* — In each of the Accused Products, when used as directed, the link is associated with said further message and included in said further message responsive to the swipe gesture.

18





f.  *[1e] and changing display of information associated with said message a)*
    *responsive to selection of a displayed further area or portion associated with said*
    *further message; and b) based on said link;* — In each of the Accused Products,
    when a user selects a displayed further area or portion associated with said further
    message (namely the reference to the originally selected message that is displayed
    with the further message), the Accused Product changes the display of
    information associated with the originally selected message by causing the
    originally selected message to be displayed in the center of the chat window (if
    not already displayed) and/or to be momentarily highlighted, as shown, for
    example, in the following sequence of screen shots:



















g.  *[1f] wherein said message and said further message are transmitted at respectively different times*. —  In each of the Accused Products, when used as directed, the further message is transmitted to other members of the chat conversation after it is created, which is later in time than the creation and transmission of the originally selected message, as shown above.

**_Allegations Relating to Infringement of the '192 Patent_**

49.     Upon information and belief after reasonable investigation, the Accused Products contain user interface functionality designed to facilitate swipe-to-reply messages in a manner that infringes the '192 Patent.

50.     One non-limiting example, set forth below (with claim language in italics), is a description of infringement of exemplary claim 24 of the '192 Patent in connection with the

Facebook Messenger, Facebook Workplace Chat, and WhatsApp Messenger apps.  Upon information and belief, the Instagram app implements the same or substantially similar infringing functionality as the Facebook Messenger app and also infringes.

51.   This description is based on publicly available information.  Wrinkl reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

a.  *[24pre] A non-transitory computer readable medium having stored thereon instructions for operating a messaging device, the instructions, when executed by a processor, cause the processor to implement the steps of*: — Regardless of whether the preamble of claim 24 is limiting, the Accused Products comprise computer instructions stored on a non-transitory computer readable medium that, when used as directed, cause a processor to implement the steps described further below for the remaining claim limitations.

b.  *[24a] displaying to a first user, on a display of said device, a window displaying at least a portion of a stream comprising graphical message display objects, each graphical message display object displayed in said window occupying a respective displayed area having a boundary and one or more fixed graphical elements displayed therein, wherein said window is associated with a predefined plurality of users of a messaging system, said plurality including said first user, and wherein at least a subset of the display objects in said stream represent respective messages of a chat message session between those users*; — Each of the Accused Products includes instructions that cause a processor to display to a first user a chat window reflecting a conversation between a pre-defined group of

two or more users, wherein the messages in said conversation are represented by graphical message display objects occupying a respective displayed area having a boundary and one or more fixed graphical elements displayed therein, as can be seen in the screen shots below. (Illustrative screenshots are provided herein for Facebook Messenger, Facebook Workplace Chat and WhatsApp Messenger. Upon information and belief, the remaining Accused Products work in a substantially similar fashion.)





c.  *[24b] directly responsive to receiving, through a user interface of said device, a single click or touch screen gesture that interacts with at least one of said fixed graphical elements displayed within the boundary of a first one of said displayed*

*graphical message display objects:* — Each of the Accused Products includes instructions that cause a processor to allow a user to select a message in a conversation with a single swipe gesture on a touch screen, wherein the user swipes a graphical message display object while touching the touch screen within the boundary of the graphical message display object.



d. *[24c] displaying, on said display and in conjunction with display of a message creation interface including a text entry box, a reference indication indicating a reference to said first one of said displayed graphical message display objects;*

— Each of the Accused Products includes instructions that cause a processor to

display a reference indication relating to the swiped message in conjunction with a message creation interface including a text entry box.



e.  *[24d] while said message creation interface is displayed, continuing to display at least a portion of said stream in said window, and enabling the device to respond to clicks or touch screen gestures that interact with at least one other of said graphical message display objects in said stream*; — Each of the Accused Products includes instructions for causing a processor to, while the message creation interface is displayed, display a portion of the stream in the chat window and enable the device to respond to clicks or touch screen gestures on other messages.

f.  *[24e] in response to receiving further user input through said message creation interface during display of said reference indication*: — Each of the Accused Products includes instructions for causing a processor to receive further user input through said message creation interface during display of the reference indication. For example, the Accused Products permit a user to tap on a button to send a message entered into the text entry box.



g.  *[24f] displaying, in said window, a new graphical message display object based on said further user input and in association with a graphical reference to a message associated with said first one of said displayed graphical message display objects; and* — Each of the Accused Products includes instructions for

causing a processor to, after a user taps the send message button, display in the window a new message (graphical message display object) that is based on user input through the message creation interface and in association with a graphical reference to a message associated with the swiped graphical message display object.





h.  *[24g] transmitting, to at least one of said predefined plurality of users, a message based on said further user input, and a reference to said message associated with said first one of said displayed graphical message display objects; and* — Each of the Accused Products includes instructions for causing a processor to transmit a message to other members of the conversation based on user input through the message creation interface and a reference to the swiped message.

  

i. *[24h] making said device responsive to a click or touch screen gesture interacting with said graphical reference to provide a further display indicating content of said message represented by said graphical reference.* — Each of the Accused Products includes instructions for causing a processor to make the device responsive to a click or touch screen gesture interacting with said graphical reference to provide a further display indicating content of said message represented by said graphical reference. For example, after a user taps the graphical reference associated with the quoted message, the chat window scrolls to the original quoted message.





***Defendants Derive Value from the Infringing Swipe-to-Reply Features***

52.     The infringing swipe-to-reply features in the Accused Products have received

critical acclaim and become very popular.  Examples of such acclaim include:

- **Telecom Press (October 2, 2018):**  "Before the Swipe to Reply feature was

  rolled out the Andriod [*sic*] users need to select the message they would like to

  reply and hit the reply button which is on top of the screen.  WhatsApp is now

  focused on bringing user experience easier to navigate to reply to the messages.

  As simple as a swipe from the left-hand side the message to reply will be

  selected."[20]

---

[20] "WhatsApp New Updated Brings 'Swipe to Reply' Feature to Android Users,"
https://telecompress.com/whatsapp-update-swipe-reply-android/  (accessed Sept. 29, 2020).

- **Gadgets360 (October 3, 2018):** "With WhatsApp … you can now use the simple swipe gesture to quickly respond to a message.  All you need to do is to swipe any individual message to the right to reply to that message on WhatsApp. The message will be quoted just above the text box to help you easily referred [*sic*] to it alongside your reply….  The new gesture support makes the experience faster as it helps you quickly respond to a message from an available thread. Also, it is useful especially if you are replying to a message in a WhatsApp group."[21]

- **Wired (May 25, 2019):**  "Quote reply is the only feature that makes WhatsApp actually useable."[22]  The quote reply feature is activated with a "swipe right on the message."[23]

- **Android Police (October 2, 2018):**  "If you're using WhatsApp Beta 2.18.300, you'll simply have to swipe (or flick, really) any message to the right to trigger a reply.  The message will be quoted and you'll be able to type in a reply very quickly.  Before this gesture was implemented, you had to tap and hold on the message and either start typing immediately (little known trick) or tap the reply button in the top bar.  The [swipe] gesture is definitely a faster and more intuitive way to do it."

---

[21] "WhatsApp for Android Gets 'Swipe to Reply' Gesture Support," https://gadgets.ndtv.com/apps/news/whatsapp-android-new-feature-swipe-to-reply-gesture-download-stickers-1926026 (accessed Sept. 29, 2020).

[22] https://www.wired.co.uk/article/whats-app-best-feature-quote-reply-obsessions#:~:text=Enter%3A%20the%20quote%20reply.,message%20also%20activates%20the%20feature (accessed Sept. 29, 2020).

[23] *Id.*

- **Scrabbl:** "Gone are the days of tapping, holding and then replying to a particular message.  With the Swipe gesture, you only have to Swipe to get into the reply context."[24]

- **TechZim (November 7, 2018):**  "The feature is extremely simple to use.  Previously, users on Android would have to long-press on a message that they wanted to reply to in order to select it, and then tap the reply icon (the arrow pointing to the left) in order to reply to that specific feature…..  The [swipe-to-reply] feature makes replying much easier."[25]

53.     Defendants prominently advertise the swipe-to-reply features.  For example, as early as August 5, 2020, Messenger's storefront on the Google Play Store depicts only eight screenshots of its software, one of which includes a quoted reply functionality.  In this regard, as shown below, the user Jamie used the swipe-to-reply feature to respond to Mai's request to "Meet at the library at 5?":

---

[24] https://www.scrabbl.com/whatsapp-kicks-off-swipe-to-reply-feature-now-available-on-beta (accessed Sept. 29, 2020).

[25] https://www.techzim.co.zw/2018/11/whatsapps-convenient-swipe-to-reply-feature-now-available-for-android-users-heres-how-to-use-it/ (accessed Sept. 29, 2020).



54.     Moreover, as previously noted, Instagram prominently announced the addition of

a "swipe to reply" functionality to the Instagram app to selected users:



55.     Upon information and belief, the popularity of the infringing swipe-to-reply features have resulted in valuable increases in user engagement.  Upon information and belief, users that are more engaged generate, and have more potential to generate, more revenues and profits for Defendants.

56.     Upon information and belief, through their use of infringing technologies, Defendants help ensure that users remain "locked in" to Facebook's platform and do not migrate to competitor platforms or messaging apps, leading to increased profits and revenues from Facebook's broader portfolio of products and services such as, for example, advertisements through its Facebook.com webpage and Facebook mobile app.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,860,198

57.    Wrinkl realleges and incorporates by reference Paragraphs 1-56 above, as if fully set forth herein.

58.    The '198 Patent is valid, enforceable, and was duly issued on January 2, 2018, in full compliance with Title 35 of the United States Code.

59.    Upon information and belief, Defendants have been aware of the '198 Patent since at least as early as October 11, 2018 as a consequence of Marc Cohen's email to Julien Codorniou, discussed *supra* at paragraphs 33-40.

60.    Specifically, and further upon information and belief, Facebook (and, through Facebook, WhatsApp and Instagram) became aware of the '198 Patent when it reviewed Mr. Cohen's email and the included video presentation, and became aware of its relevance to the swipe-to-reply features of Facebook Messenger, Facebook Workplace Chat, the Instagram App and WhatsApp Messenger.  Upon information and belief, Defendants continued to support and encourage use of the swipe-to-reply features of Facebook Messenger, Facebook Workplace Chat, the Instagram App and WhatsApp Messenger despite knowing that the use of that feature by Facebook users would directly infringe at least claim 1 of the '198 Patent.

61.    Upon information and belief, Defendants have directly infringed at least claim 1 of the '198 Patent in violation of 35 U.S.C. § 271(a),  either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States the Accused Products.  For example, Defendants have used each of the Accused Products in the United States, at a minimum for internal testing and development and for internal corporate communication, in the manner described above, thereby directly infringing claim 1 of the '198 Patent.

62.     Upon information and belief, Defendants have taken, and/or will in the future take active steps to induce infringement by others of at least claim 1 of the '198 Patent in violation of 35 U.S.C. §271(b), including, for example, by inducing end-users to use the Accused Products in the manner described above.  Such active steps include, but are not limited to, distributing the Accused Products and instructions to enable and facilitate direct infringement by end-users of the Accused Products, with the specific intent that end-users use such Accused Products in a manner that infringes at least claim 1 of the '198 Patent.  Upon information and belief, Defendants were either aware of, or willfully blind to, the existence of the '198 Patent since at least as early as October 11, 2018, when Facebook received Marc Cohen's email to Julien Codorniou, and performed such acts of inducement with the knowledge and intent that they would lead to acts of direct infringement.

63.     Upon information and belief, Defendants have contributed to and/or will in the future contribute to the infringement of at least claim 1 of the '198 Patent by others, including end-users of the Accused Products, in violation of 35 U.S.C. § 271(c).  Acts by Defendants that have contributed to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendants of the Accused Products.  Such Accused Products contain software components that are especially made for or adapted for use to infringe at least claim 1 of the '198 Patent, and are not a staple article of commerce and are not suitable for substantial non-infringing use.  Upon information and belief, Defendants have been aware that the Accused Products contained components that are especially made or adapted for use in an infringement of the '198 Patent since at least as early as October 11, 2018, when Facebook received Marc Cohen's email to Julien Codorniou.

64.     Additional allegations regarding Defendants' knowledge of the '198 Patent will likely have further evidentiary support after a reasonable opportunity for discovery.

65.     By their actions, Defendants have injured Wrinkl and are liable to Wrinkl for infringement of the '198 Patent pursuant to 35 U.S.C. § 271.

66.     Upon information and belief, Defendants undertook their infringing actions despite knowing that such activities infringed the '198 Patent, since at least as early as October 11, 2018.  As such, Defendants have and continue to willfully infringe the '198 Patent.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,728,192**

67.     Wrinkl realleges and incorporates by reference Paragraphs 1-66 above, as if fully set forth herein.

68.     The '192 Patent is valid, enforceable, and was duly issued on July 28, 2020, in full compliance with Title 35 of the United States Code.

69.     Upon information and belief, Defendants have been aware of the '192 Patent since at least its issuance date, as a consequence of Marc Cohen's October 11, 2018 email to Julien Codorniou, discussed *supra* at paragraphs 33-40.  Defendants are sophisticated corporate entities and frequent litigants in patent cases.  They also interact regularly with the Patent Office.  As a consequence of this experience and expertise, and further upon information and belief, after becoming aware of the '198 Patent as alleged above, Defendants became aware of the related '192 Patent when it issued on July 28, 2020, as its ongoing prosecution and eventual issuance were matters of public record.

70.     Specifically, and further upon information and belief, Facebook (and, through Facebook, WhatsApp and Instagram) became aware of the '192 Patent upon its issuance, and

was aware of its relevance to the swipe-to-reply features of Facebook Messenger, Facebook

Workplace Chat, the Instagram App and WhatsApp Messenger. Upon information and belief,

Defendants continued to encourage use of the swipe-to-reply features of Facebook Messenger,

Facebook Workplace Chat, the Instagram App and WhatsApp Messenger despite knowing that

the use of that feature by Facebook users would directly infringe at least claim 24 of the '192

Patent.

71.     Upon information and belief, Defendants have directly infringed at least claim 24

of the '192 Patent in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of

equivalents, by, among other things, making, using, offering for sale, selling, and/or importing

into the United States the Accused Products. For example, Defendants have used the Accused

Products, at a minimum for internal testing and development and for internal corporate

communication, in the manner described above, and have also made copies of the Accused

Products on non-transitory computer readable media, thereby directly infringing at least claim 24

of the '192 Patent.

72.     Upon information and belief, Defendants have taken and/or will in the future take,

active steps to induce infringement by others of at least claim 1 of the '192 Patent in violation of

35 U.S.C. §271(b), including, for example, by inducing end-users to use the Accused Products in

the manner described above. Such active steps include, but are not limited to, distributing the

Accused Products and instructions to enable and facilitate direct infringement by end-users of the

Accused Products, with the specific intent that end-users make and use such Accused Products

so as to infringe at least claim 24 of the '192 Patent. Upon information and belief, Defendants

were either aware of, or willfully blind to, the existence of the '192 Patent prior to the filing date

of this Complaint, and performed such acts of inducement with the knowledge and intent that

they would lead acts of direct infringement, or, at the very least, Defendants have been made aware of the '192 Patent as of the filing date of this Complaint, and will continue to engage the aforementioned acts of inducement with the knowledge and intent that they would lead acts of direct infringement.

73.     Upon information and belief, Defendants have contributed to and/or will in the future contribute to the infringement of at least claim 24 of the '192 Patent by others, including end-users use of the Accused Products, in violation of 35 U.S.C. § 271(c).  Acts by Defendants that have contributed to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendants of the Accused Products.  Such Accused Products include components that are especially made for or adapted for use to infringe at least claim 24 of the '192 Patent, and are not a staple article of commerce and are not suitable for substantial non-infringing use.  Upon information and belief, Defendants were either aware that the Accused Products include components especially made or adapted for use in an infringement of the '192 Patent prior to the filing of this Complaint, or became aware of this fact when this Complaint was filed.

74.     Additional allegations regarding Defendants' knowledge of the '192 Patent will likely have further evidentiary support after a reasonable opportunity for discovery.

75.     By their actions, Defendants have injured Wrinkl and are liable to Wrinkl for infringement of the '192 Patent pursuant to 35 U.S.C. § 271.

76.     Upon information and belief, Defendants undertook their infringing actions despite knowing that such activities infringed the '192 Patent, since at least as early as July 28, 2020, when the '192 Patent issued.  As such, Defendants have and continue to willfully infringe the '192 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Wrinkl respectfully requests that this Court enter judgment against Defendants as follows:

A.  Finding that each of the Patents-in-Suit has been infringed by Defendants;

B.  Finding the Defendants' infringement of the Patents-in-Suit has been willful;

C.  Awarding damages adequate to compensate Wrinkl for the patent infringement that has occurred, in accordance with 35 U.S.C. § 284, including an assessment of pre-judgment and post-judgment interest and costs, and an accounting as appropriate for infringing activity not captured within any applicable jury verdict;

D.  Awarding Wrinkl an ongoing royalty for Defendants' post-verdict infringement, payable on each product or service offered by Defendants that is found to infringe one or more of the Asserted Patents, and on all future products and services that are not colorably different from those found to infringe, or—in the alternative if Defendants refuse the ongoing royalty—permanently enjoining Defendants from further infringement;

E.  Providing an award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

F.  Finding that this is an exceptional case and an award to Wrinkl of its costs, expenses, and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

G.  Providing such other relief, including other monetary and equitable relief, as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Wrinkl demands a jury trial on all issues so triable.

Dated:  October 2, 2020                                 FISH & RICHARDSON P.C.

                                                        */s/ Kelly Allenspach Del Dotto*
                                                        Kelly Allenspach Del Dotto (#5969)
                                                        222 Delaware Avenue, 17th Floor
                                                        Wilmington, DE 19201
                                                        (302) 652-5070
                                                        kad@fr.com

                                                        Frank E. Scherkenbach
                                                        Lawrence K. Kolodney
                                                        Adam J. Kessel
                                                        Chet D. Campbell
                                                        Kayleigh E. McGlynn
                                                        FISH & RICHARDSON P.C.
                                                        1 Marina Park Drive
                                                        Boston, MA 02210
                                                        (617) 542-5070
                                                        scherkenbach@fr.com
                                                        kolodney@fr.com
                                                        kessel@fr.com
                                                        chet.campbell@fr.com
                                                        mcglynn@fr.com

                                                        *Attorneys for Plaintiff*
                                                        *Wrinkl, Inc.*