IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WRINKL, INC.,

    Plaintiff,

v.

FACEBOOK, INC., WHATSAPP, INC., and
INSTAGRAM, LLC,

    Defendants.

Civil Action No. 20-cv-1345-RGA

MEMORANDUM ORDER

Before me is Defendants' Motion to Dismiss for Failure to State a Claim. (D.I. 8). The motion has been fully briefed. (D.I. 9, 16, 21). For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

Wrinkl's Complaint alleges infringement of "at least" claim 1 of U.S. Patent No. 9,860,198 (the '198 Patent) and "at least" claim 24 of U.S. Patent No. 10,728,192 (the '192 Patent).[1] (D.I. 1 ¶¶ 57-76).

The Asserted Patents share a common specification and are broadly directed to means of referencing prior electronic messages. (*See* D.I. 9 at 2-3 (describing Asserted Patents); D.I. 16 at 4 (same)). They appear to have the same priority date of early 2017. The parties do not agree as to whether any of the Asserted Patent claims are representative for purposes of the § 101 eligibility analysis. (D.I. 16 at 4 n.1). While Wrinkl briefly notes that the independent claims of

---

[1] The Complaint also alleges induced infringement of "at least claim 1" of the '192 Patent, but this appears to be a typo as the paragraph goes on to discuss infringement of claim 24. (D.I. 1 ¶ 72).

1

the Asserted Patents have differences, it does not point to any. (*Id.*). Rather, its briefing refers generally to the "Asserted Patents" and does not appear to make any arguments that rely on claim limitations found in only one of the Patents. As such, I agree that it is appropriate to treat claim 1 of the '198 Patent as representative. *Elec Power Grp., v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016) (treating claim as representative when briefing did not "present[] any meaningful argument for the distinctive significance of any claim limitations other than those included in [the claim]").

>Claim 1 of the '198 Patent recites:
>
>A method for referencing a message, said method comprising the steps of:
>receiving selection, from a display, of said message by selecting an area or object
>>displayed on said display and associated with said message, wherein at least a portion of said message is displayed during selection;
>
>allowing a further message to be formed with a link to said message, wherein said
>>message was displayed prior to said further message being formed;
>
>wherein said selection causes said link to be included automatically in said further
>>message and is performed by a single step, which is the selection itself;
>
>wherein said link is associated with said further message, and wherein said link is
>>included in said further message responsive to said selection of the area or object; and
>
>changing display of information associated with said message a) responsive to selection
>>of a displayed further area or portion associated with said further message; and b) based on said link;
>
>wherein said message and said further message are transmitted at respectively different
>>times.

('198 Patent 19:16-39).

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint

as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

### B. Patentability

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018). This is, however, appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of subject matter that are not eligible for patents—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* (internal quotation

marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. at 217. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (alteration in original) (quoting *Bilski*, 561 U.S. at 610-11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223.

### C. Willful Infringement

A determination of willfulness requires a finding of "deliberate or intentional" infringement. *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 2021 WL 4434231, at *4 (Sept. 28, 2021); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). A finding of "subjective willfulness," proof that the defendant acted in the face of a risk of infringement that was "either known or so obvious that it should have been known to the accused

infringer," can satisfy this standard. *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 136 S.Ct. 1923, 1930 (2016)), *rev'd on other grounds*, 138 S.Ct. 2129 (2018).

## III.  DISCUSSION

### A. Patentability

Beginning with *Alice* step one, Facebook argues that the '198 and '192 Patents are directed to the "abstract idea of referencing and accessing information about a message." (D.I. 9 at 8). The Asserted Patents, Facebook contends, merely disclose "fundamental concepts" inherent in having a conversation, both electronically and verbally. (*Id.* at 10).

Broadly, the Asserted Patents describe (1) selecting a prior message to reference which initiates the drafting of a new message; (2) inserting a link or "reference indication" to the prior message into the new message; (3) displaying information associated with the prior message when a user interacts with the link included in the new message. (*See* D.I. 9 at 2; D.I. 16 at 5; *see* '198 Patent 19:15-39; '192 Patent 19:23-20:2). Claims 1-9, 19, and 21-24 of the '198 Patent are method claims. The dependent method claims (all but claim 1) generally modify how the new message is initiated and drafted (claims 2-3, 9, and 21), what information is displayed in the new message (claims 4-7, and 19), the environment in which the message in drafted and received (claim 8), applying the method to a plurality of messages and links (claims 22-23), and removing the link from the new message after it is transmitted (claim 24). '198 Patent 19:40-20:4, 20:63-64, 21:1-15. Claims 10-18 and 20 are apparatus claims that mirror the language of the method claims. '198 Patent 20:5-62, 65-67.

The '192 Patent claims are similarly organized. Claims 1-15 are method claims directed to "operating a messaging device" in a way that allows a user to select a message from a message

stream and draft a new message, which includes a "reference indicator" to the prior message. '192 Patent 19:23-46. The dependent method claims elaborate on the "one-click" feature (claims 2-3, and 14), the character of the reference indicator and the information it displays (claims 4-12), allowing the user to interact with the display triggered by the reference indicator (claim 13), and the character of the messaging display (claim 15). '192 Patent 19:23-20:64. Claims 16-23 are device claims that mirror the language of the method claims and claims 24-30 are directed to a "non-transitory computer readable medium having stored thereon instructions for operating a messaging device" and also mirror the language of the method claims. '192 Patent 20:65-24:22.

Wrinkl argues that the Asserted Patents are not directed to an abstract idea and instead disclose a specific set of improvements to conventional messaging graphical user interfaces (GUIs). (D.I. 16 at 5). In support, Wrinkl relies primarily on a line of Federal Circuit cases that address the patentability of GUIs under *Alice* step one: *Core Wireless*, *Trading Techs.*, and *Data Engine*. (*See id*. at 12-13). As the parties engage in a lengthy debate regarding the applicability of this caselaw, I will address these cases briefly. (D.I. 16 at 12-15; D.I. 21 at 6-7).

The Federal Circuit addressed the patentability of "a method for displaying market information" on a GUI in *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1003 (Fed. Cir. 2017).[2] The claims at-issue described "a trading system in which a [GUI] 'display[s] the market depth of a commodity traded in a market, including a dynamic display for a plurality of bids and for a plurality of asks in the market for the commodity and a static display of prices corresponding to the plurality of bids and asks.'" *Trading Techs.*, 675 F. App'x at 1003 (internal citations omitted). Agreeing with the District Court, the Federal Circuit concluded that "the claimed GUI method imparts a specific functionality to a trading system" and was directed to a

---

[2] *Trading Techs.* is non-precedential, so I consider it merely for its persuasive value.

specific problem in the art. *Id.* at 1006. Helpfully, the Court's opinion described the applicable § 101 precedent, noting, "Precedent has recognized that specific technologic modifications to solve a problem or improve the functioning of a known system generally produce patent-eligible subject matter." *Id.* at 1004-05.

In *Core Wireless Licensing S.A.R.L. v. LG Elecs. Inc.*, 880 F.3d 1356 (Fed. Cir. 2018), the Court considered the patentability of two patents that "disclose[d] improved display interfaces, particularly for electronic devices with small screens like mobile telephones." 880 F.3d at 1359. The patents disclosed an application summary window that included a limited set of information about the selected application and could be reached directly from the main menu while the application was unlaunched. *Id.* at 1359-60, 1362-63. The Court rejected the assertion that the patents merely disclosed the abstract ideas of "an index" or "summarizing information" and concluded that they were directed to "an improved user interface for computing devices." *Id.* at 1362. In its analysis, the Court focused on language in the specification highlighting the issues with prior art user interfaces and the fact that patents recited specific improvements in computer functionality by improving the accessibility and efficiency of the user interface. *Id.* at 1363.

Wrinkl also cites the 2018 case *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018).[3] A subset of the claims addressed in *Data Engine* concerned "a method of implementing a notebook-tabbed interface, which allows users to easily navigate through three-dimensional electronic spreadsheets." *Data Engine*, 906 F.3d at 1003 (describing the "Tab Patents"). The District Court concluded that the claims described "the abstract idea of using notebook-type tabs to label and organize spreadsheets," which is a process not unique to an

---

[3] I think for present purposes *Data Engine* is the most relevant of Plaintiff's cited cases.

electronic environment. *Id.* at 1006 (quoting *Data Engine Techs. LLC v. Google Inc.*, 211 F. Supp. 3d 669, 678 (D. Del. 2016)). On appeal, the Federal Circuit reversed, writing that the representative claim was "directed to a specific method for navigating through three-dimensional electronic spreadsheets" and "provides a specific solution to then-existing technological problems in computers and prior art spreadsheets."[4] *Id.* at 1008. The Court likened the structural improvements embodied in the representative claim to those upheld in *Core Wireless* and *Trading Techs I*. *Id.* at 1009.

Wrinkl urges that the '198 and '192 Patent claims are analogous to those upheld by the Federal Circuit at step one of the *Alice* inquiry. (D.I. 16 at 12-13). The specification identifies an existing problem in the field of electronic communication, described at one point as:

> On any given day, users may exchange numerous messages regarding a diverse range of topics. The users may use the messages to discuss, for example, group activities, to solicit opinions about various topics, or simply exchange short conversations with friends or co-workers. One of the drawbacks to using typical chat messaging systems is the sequential nature of the messages sent and received. For example, messages often appear in a channel or log in chronological order. If a user in a group chat session comes back from a meeting after several hours, they may be confronted with a bunch of messages. In this regard, the group chat sessions are often characterized by short bursts of dialog around a given topic. By the time a user views the messages, the topic may have changed several times. This makes it difficult for a user to post a response to a previous message that is within context of the ongoing message conversation.

'198 Patent 2:65-3:14. The Asserted Patents purport to solve this problem by allowing users of electronic communication software to automatically link their responses to previous messages. '198 Patent 19:16-39; '192 Patent 19:23-20:2.

Facebook argues that the concepts recited in the Asserted Patents are simply characteristics of human conversation and thus embody an abstract concept. (D.I. 9 at 10). As an

---

[4] The Court of Appeals used some form of the word "specific" too many times to count to explain why the relevant claims there were not abstract.

example, Facebook cites common verbal cues, such as "to follow up on your point from yesterday." (*Id.* at 10). Facebook also likens the prior art issues described in the Patent specifications to those commonplace in email chain communications and successive legal briefing. (D.I. 21 at 3-4). While the act of referencing prior ideas or messages certainly occurs in-person and electronically, Facebook's argument risks oversimplifing the required analysis. *Data Engine*, 906 F.3d at 1011 (explaining, "It is not enough, however, to merely trace the invention to some real-world analogy"). I must consider the claims as a whole, in light of the specification, to determine if they are directed to the act of referencing a prior message or something more concrete.

In light of the cases discussed by Wrinkl, I agree that on a motion to dismiss I must conclude that the Asserted Patents are not directed to an abstract concept. In particular, I see no basis to distinguish these claims from those upheld in *Core Wireless*. *See Core Wireless*, 880 F.3d at 1359-60. Here, the specification identifies a problem that exists in prior art electronic messaging systems and provides a solution that improves the capability of a generic user interface in a particular way. A user may select a prior message to reference and view at least a portion of the contents of this message while selecting it. '198 Patent 19:16-22. Then, the user may draft a new message in reference to this prior message, including a link to the prior message with one-click or touch that will display additional information when the recipient interacts with it. '198 Patent 19:23-39. The dependent claims add further capabilities. As a result, the display functionality "enables message referencing in a manner that enables faster computer processing and more efficient use of computer devices." '198 Patent 2:59-61.

Similarly, the *Core Wireless* claims appeared to very generally disclose a summary display screen, but the Federal Circuit upheld such claims as "directed to a particular manner of

summarizing and presenting information in electronic devices." *Core Wireless*, 880 F.3d at 1362. The specification explained that the claims were directed to improving one's ability to use the computing device through improvements to the user interface. *Id.* at 1363. The Court interpreted this to "clearly indicate[] that the claims are directed to an improvement in the functioning of computers." *Id.* I find that the claims at-issue present an analogous situation.

Facebook also argues that the Asserted Patents contain only results-based and functional language and lack any explanation of how to achieve the desired result, a hallmark of ineligible claims.[5] (D.I. 9 at 11). However, a similar argument was addressed in *Data Engine* and discusses many of the cases cited in Facebook's briefing. *Data Engine*, 906 F.3d at 1010-11 (discussing the "Tab Patents" in light of *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332 (Fed. Cir. 2017), and *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315 (Fed. Cir. 2017)). The Court explained that, unlike in the cited cases, "the [Tab Patents] recite[]a specific structure (i.e., notebook tabs) within a particular spreadsheet display that performs a specific function (i.e., navigating within a three-dimensional spreadsheet)." *Id.*

Here, the Asserted Patents describe a message referencing structure (interactive links and reference indicators), within electronic messaging, that functions to address identified inefficiencies in the typical user interface and to avoid data duplication. '198 Patent 3:61-4:12; 4:58-63.

---

[5] I think this is Facebook's best argument. But, on a motion to dismiss relating to these Asserted Patents, I cannot conclude they are directed to an abstract idea.

As such, on the motion to dismiss, I find that the Asserted Patents are not directed to an abstract idea. My finding ends the inquiry and thus I will not address the parties' arguments regarding the second step of the *Alice* analysis.

### B. Willful Infringement and Indirect Infringement

The parties dispute whether Wrinkl's complaint adequately alleges pre-suit knowledge of the '198 and '192 Patents to support its allegations of willful and indirect infringement. (D.I. 9 at 19-20).

Wrinkl's Complaint sufficiently alleges pre-suit knowledge of the '198 Patent. The Complaint alleges that a named inventor emailed a Facebook Vice President to discuss Wrinkl's technology and included a link to a video presentation describing the technology. (D.I. 1 ¶¶ 34-36). The linked video included the '198 Patent number. (*Id.* ¶ 37). After receiving the email, the Facebook Vice President "acknowledged receipt and stated he would talk to his 'team' about it." (*Id.* ¶ 38). The Complaint also alleges that the relevance of the '198 Patent to Facebook's own "swipe-to-reply" feature, the accused technology, would have been apparent after review of the video. (*Id.* ¶ 60).

Facebook takes issue with the Complaint because it requires the assumption that the Facebook Vice President opened the email, watched the video, and read an additional follow-up email. (D.I. 9 at 20). I am, however, required to take all the well-pleaded allegations in the Complaint as true and view the pleadings in Wrinkl's favor at the motion to dismiss stage. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). Accordingly, I believe the Complaint plausibly alleges that Facebook obtained pre-suit knowledge of the '198 Patent in October 2018, via the email exchange with the named inventor.

11

The Complaint alleges pre-suit knowledge of the '192 Patent based on the fact that "its ongoing prosecution and eventual issuance were matters of public record." (D.I. 1 ¶ 69).[6] If such a pleading were sufficient it would effectively support a finding of pre-suit knowledge for every patent. It appears that the Complaint attempts to tie Facebook's pre-suit knowledge of the '192 Patent to the email exchange in October 2018. The '192 Patent did not issue, however, until July 2020. (*Id.*). Compounding the scant pleading, Wrinkl's briefing addresses only the email exchange that references the '198 Patent and does not address the '192 Patent. (D.I. 16 at 20). In light of these issues, I agree with Facebook that Wrinkl's allegations do not contain sufficient factual matter to support a finding of pre-suit knowledge of the '192 Patent.

Lastly, Facebook asks the Court to dismiss Wrinkl's post-suit willful infringement and induced infringement claims. (D.I. 9 at 20). As the briefing acknowledges, there is disagreement in this District as to whether a Complaint alone may support post-suit willful and induced infringement claims. (D.I. 21 at 10 n.7). I have certainly done my share to contribute to the disagreement, having been on both sides of the issue. Compounding the consequences of the disagreement, motions to dismiss are often referred to Magistrate Judges, so they are put in the unenviable position of either issuing inconsistent rulings depending upon which district judge made the referral or issuing consistent rulings that will be difficult for some of the district judges to sustain when there are objections. The state of the law encourages accused infringers to waste resources and time filing motions to dismiss that usually have no lasting impact on the case. And

---

[6] Wrinkl also alleges that Defendants are "sophisticated corporate entities and frequent litigants in patent cases. They also interact regularly with the Patent Office." (D.I. 1 ¶ 60). I do not think such allegations are sufficient absent more specific information. *See, e.g.*, *10x Genomics, Inc. v. Celsee, Inc.*, 2019 WL 5595666, at *8 (D. Del. Oct. 30, 2019), *report and recommendation adopted*, 2019 WL 6037558 (D. Del. Nov. 14, 2019).

it does not seem like the issue is one that is likely to reach the Court of Appeals, so the issue is going to continue to percolate without reaching a boil.

I am going to solve the Magistrate Judge referral concern by no longer referring the Rule 12(b)(6) pleading motions (as distinguished from the § 101 motions to dismiss) to Magistrate Judges. (For outstanding referrals to Magistrate Judges, of which there are nearly none, I will adopt whatever they have recommended. There is no reason to continue to waste resources on this issue.).

When there is a lack of pre-suit knowledge, there are two questions. One, does the complaint operate going forward, without more, to establish knowledge? Two, if it does not, should the plaintiff be allowed to amend the complaint to plead knowledge since the filing of the original complaint?

I do not think the complaint should operate going forward. Complaints, generally-speaking, do not allege future events. This was the view that I took when I first became a judge, and, while I have sometimes deviated from that approach, it was more because of the lack of consequence of the deviation than for any other reason.

I think the plaintiff should be allowed to amend a complaint to allege knowledge since the filing of the original complaint. This too was the approach I initially adopted. But this approach would work out differently in practice for indirect infringement than for willfulness.

For indirect infringement, if the plaintiff were not permitted to amend a complaint, it would be the equivalent of saying that the plaintiff's failure to give notice of the patents outside of litigation operated as a bar to bringing a suit for indirect infringement. In some cases, such a rule would make no practical difference. In other cases, such as ones involving patents with method claims, if the plaintiff cannot bring indirect infringement claims, the plaintiff may not be

able to bring any claims at all. Suing the entities performing the methods may be impossible or completely impractical. In such circumstances, a patentee would have no ability to use litigations against even clear infringement. I do not think this can be the right outcome. Thus, I do not see any basis for a rule prohibiting the amendment of a complaint to allege indirect infringement. I say this notwithstanding that there are benefits to requiring the plaintiff to seek a non-litigation resolution before resorting to litigation. In the usual case, if the plaintiff's original complaint were dismissed for failure to plead pre-suit knowledge, then the plaintiff's amended complaint would require only one additional paragraph in order to allege knowledge since the filing of the original complaint.

For willfulness, I view things differently. Willful patent infringement is the rare exception, not the rule. *See, e.g., Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987-88 (Fed. Cir. 2021) (infringement and knowledge of the patent does not create a jury issue). Thus, while a plaintiff could file an amended complaint alleging willfulness, when there is no pre-suit knowledge, it is not sufficient merely to allege the defendant has knowledge since the filing of the original complaint and has not ceased doing whatever the infringing behavior is alleged to be.

Willfulness is based on a defendant's bad state of mind. The bad state of mind is worse than the bad state of mind required to prove indirect infringement. *See SRI*, 2021 WL 4434231, at *4 ("the standard required for willful infringement is different than that required for induced infringement"). It is possible that a defendant could engage in such bad behavior even though it did not know of the patent until suit was filed. *Cf. Nox Med. Ehf v. Natus Neurology Inc.*, 2018 WL 4062626, at *4 (D.Del. Aug. 27, 2018) (defendant copied plaintiff's product before the patent issued). But in the usual case, willfulness based on post-suit knowledge is a black box. Defendants usually act on the basis of the advice of counsel once they are sued. Absent a waiver

or an advice of counsel defense (which in my experience never happens), such advice is not disclosed. The advice of counsel is often coming from multiple sources, usually including trial counsel. The law says the jury cannot draw an adverse inference from the failure of an infringer to present any evidence that it relied upon advice of counsel. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019), *cert. den.*, 140 S.Ct. 1108 (2020). As I have pointed out elsewhere, there is essentially a dearth of evidence in most cases regarding the presence or absence of post-suit willfulness because the evidence would come from the infringer and is not discoverable because of privilege. *See Bioverativ Inc. v. CSL Behring LLC*, 2020 WL 1332921, at *4 (D.Del. Mar. 23, 2020). Thus, unless the pieces necessary to allege post-suit willfulness are in place before the suit is filed, I will, in the usual case, grant motions to dismiss that are entirely based on post-suit conduct. Such allegations are not plausible.

In addition, it should not be the case that every patent infringement lawsuit is automatically a willful infringement case. But if all that is required is the filing of a complaint and a plausible allegation of infringement, then every case would be a willful infringement case.

Since there are insufficient allegations of pre-suit knowledge of the '192 Patent, I will dismiss the indirect and willful infringement claims relating to it.

### IV.   CONCLUSION

For the reasons set forth above, Facebook's motion to dismiss (D.I. 8) is **GRANTED** in part and **DENIED** in part. Facebook's motion to dismiss Wrinkl's Complaint in full on the grounds of patent ineligibility is **DENIED**. Facebook's motion to dismiss Wrinkl's willful infringement and indirect infringement claims is **DENIED** as to the '198 Patent and **GRANTED**

as to the '192 Patent.  Plaintiff is **GRANTED** leave to amend the complaint so long as it does so no more than two weeks from the issuance of this Memorandum Order.

IT IS SO ORDERED this 30th day of September 2021.

_____
United States District Judge